February 6, 2023
~~December 28, 2022~~

Allan C. Mugan 08953-029
Federal Correctional Institution
P.O. Box 7007
Marianna, Fl. 32447

RECEIVED
FEB 13 2023
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

U.S. District Court
Clerk of Court
111 Seventh Ave SE
Cedar Rapids, Ia 52401

Dear Clerk,

Please file the enclosed petition and return a copy of same file stamped for proof of receipt and send it to me at the address above.
Thank you in advance for your time and consideration.

Respectfully,

*[signature]*

cc) no copies of the petition have been served upon any interested party in this case.

In The United States District Court
For The Northern District of Iowa

Allan C. Mugan,
Plaintiff,

v.                                    Re: 03-3021

United States of America,
Respondent.


Petition For Relief
Pursuant 28 U.S.C. ss 2255, and
Motion For Expedited Consideration.

Comes now Allan C. Mugan to respectfully petition this Honorable Court for relief pursuant 28 U.S.C. ss 2255.

In support thereof Mugan states as follows:

1. On August 8, 2022 United States probation moved this Court requesting a termination of Mugan's Supervised Release.

2. On August 26th, 2022 this Court sentenced Mugan to the maximum term of 11 months.

3. Mugan now files for relief based upon the fact that he received ineffective assistance of counsel, further explained below.

4. Mugan also claims he has newly discovered evidence not available for this Court's consideration at the time the Court heard the evidence on August 26, 2022. This is also explained below.

5. Because Mugan is of the belief that his conviction and incarceration violate U.S. Supreme Court Precedent (Rehaif v. United States, 139 S.Ct. 2191, 204 L.Ed.2d 594 (2019)) as well as the U.S. Constitution, he requests the Court examine this petition expeditiously and order his immediate release from prison.

The Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial, since access to counsel's skill and knowledge is necessary to accord defendants the "ample" opportunity to meet the case of the prosecution to which they are entitled. Strickland v. Washington, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Counsel can deprive a defendant of the right to effective assistance of counsel by failing to render adequate legal assistance.

The benchmark for judging any claim of the effectiveness of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

Mugan must show that counsel's performance was deficient and that deficient performance prejudiced his defense.

The Law which applies to the facts below can be found in Eighth Circuit Court of Appeals and also the United States Supreme Court precedent.

On point caselaw:

Rehaif v. United States, 139 S.Ct. 2191, 204 L.Ed.2d 594 (2019) states:

Justice Breyer - "The government had to prove both that the defendant knew he possessed a ("dangerous weapon") and that he knew he belonged to the relevant category of persons barred from the possession."

Justice Breyer also stated, "The word "knowingly" applies both to the defendant's conduct and to the defendant's status." "To convict a defendant, the government must therefore show that the defendant knew he possessed a "dangerous weapon" and also that he knew he had the relevant status when he possessed it."

See also United States v. Cooper, 998 F.3d 806 (8th Cir. 2021); United States v. Carnes, 22 F.4th 743 (8th Cir. 2021); and United States v. Walking Bull, 8 F.4th 762 (8th Cir. 2021).

Defense Counsel was ineffective by failing to render adequate legal assistance. Her conduct undermined the Court's ability to adjudicate a just result. Mugan was well within his rights to believe his counsel would utilize the law and present all of the facts for the Court to consider.

Because of counsel's deficient performance the Court had no choice but to agree with the government and violate Mugan's Supervised Release and send him to a federal prison for 11 months incarceration.

Regarding the violation alleged that Mugan possessed a dangerous weapon it was incumbant upon the government to prove beyond a reasonable doubt that Mugan knew he was forbidden to possess the Kinetic Launcher or stun gun and he knew that his status of being on Supervised Release was the qualifier. It would also need to be proven Mugan knew the "weapons" were considered dangerous.

Defense counsel failed to allow Mugan to testify even though he insisted he be allowed to. Defense counsel also failed to ask sufficient questions of the U.S. Probation Officer related to Mugan's possession of the "dangerous weapons" even though she was provided with the necessary evidence and witness corroberation to verify the testimony.

Had defense counsel allowed Mugan to testify the Court would have discovered the true nature involving Mugan's possessing the weapons.

Prevailing professional norms do not allow defense counsel to purposely withhold pertinent information from the Court's scrutiny. Defense counsel knew that Tonia H. was Mugan's supervised Release officer since November of 2021 and not May of 2022 as she testified to. More importantly, Defense counsel knew that Mugan had asked his probation officer in the month of February (during a home visit) if it was legal for him to purchase the Kinetic launcher (which looks like a real gun). The officer read the description of the self defense weapon on the Amazon web site, that Mugan presented to her, with another probation officer looking

over her shoulder and reading too, The Officer unequivocally told Mugan "yes it is legal for you to own that." Jake McCallister, the second officer witnessed this event and so stated when he conducted the search that resulted in the violation allegation. During the search Mr. McCallister stated he distinctly remembers that conversation but added Mugan's officer DID say it was legal for me to possess it but she did not give me permission to buy it.

These conversations are easily verifiable as U.S. Probation Officers are servants of the U.S. District Court.

Mugan served 2 years on Supervised Release without so much as a parking ticket. Probation complimented Mugan on home visits stating they have never seen a parolee accomplish so much in such a short period of time. Mugan travelled, of his own accord, 90 miles each way to get to polygraph tests ... 3 times and passed every one of them. Mugan donated to two charities monthly. Mugan helped his neighbors and community with his labor and own expense. Mugan never failed a UA test and as such Probation moved him down to 2 tests per year. Mugan called probation with concerns and questions. Mugan completed Treatment Phase I. Mugan asked his probation officer if it was legal for him to possess the Kinetic launcher advertised on Amazon. He did not just go out and buy one. She said yes it was legal. Mugan paid $525.00 for the "gun" basing his decision to do so on the fact his probation officer said he could legally do so.

Even though Mugan failed to further his question by asking

to buy it... it is surprising the officer didn't continue with... "yes, it's legal to possess.... but not while you are under supervised release."

Mugan could more than demonstrate he did everything he was supposed to do for 2 years under supervision, including paying the amount of court ordered restitution in full. It would be illogical for the Court to determine Mugan purposely violated the rules of supervision out of the pure blue sky after doing so well for more than 2 years. But the Court was denied access to these facts due to counsel's ineffective assistance.

The U.S. Supreme Court in Rehaif has declared that the word "knowingly" applies both to the defendant's conduct and to the defendant's status -- Justice Breyer.

Mugan did not even attempt to hide the weapons when he looked out the blinds and seen all of the probation officers outside. His belief was, it was legal to posess so he left it on the night stand by his bed in plain view.

Because counsel's deficient performance prejudiced Mugan and denied the Court all of the facts... Mugan's conviction must be vacated and his immediate release ordered.

Regarding defense counsel's deficient performance in questioning the government's witness Brenda Sinclair:

Had Counsel allowed Mugan to testify or ask Ms. Sinclair appropriate questions, according to the evidence, the court would have had leniency on the violation of the No Contact Order.

The government entered a text message as evidence. Mugan pointed to the fact that at the top of the message were the words: "Can I still text you or no?" Counsel ignored it. These were Ms. Sinclair's words after Mugan told her he can not be conversing with her due to the Court's No Contact Order.

This simple message, at the beginning of the contact, shows it was Ms. Sinclair who was interested in contacting Mugan and not Mugan contacting her. Ms. Sinclair called Mugan on the phone more than 50 times. She emailed him just as many. Mugan had witnesses to testify that counsel ignored.

Mugan asked a nephew if Ms. Sinclair was going to be homeless. A few days later Ms. Sinclair phoned Mugan and appreciated his concern. She stated her living in a bedroom of a mobile home was like jail and becoming intolerable that she would soon be homeless. Mugan told her he was still subject to the No Contact Order although she wasn't. She said she would email Mugan's brother on his phone to subvert her conversations from my probation officer.

Ms. Sinclair, in wanting a place to live after spending most of her adult life as homeless, wrote Judge Reade a letter asking for the No Contact Order to be lifted.

Mugan believes she wrote again after no answer and also made several phone calls to the court Administrator and Judge Reade's assistant.

After a month the assistant told Ms. Sinclair that she should tell Mugan's probation officer to modify

the Supervised Release as it was his case to be altered. Ms. Sinclair told this to Mugan and said she needed to have a place to put her belongings right away.

Mugan called an attorney who told him Judges 99% of the time will remove a No Contact Order at the request of the individual its designed to protect.

That being said Mugan wrote the Motion to the Court on July 19, 2022. After a couple weeks with no answer Mugan told Ms Sinclair she could bring her belongings believing it just a matter of time for the Court to Grant the Motion.

Ms Sinclair moved her belongings to Mugan's home and said she had no place to go back to as her girlfriend kicked her out. Mugan let her stay.

There was never once any coercion or manipulation on Mugan's part in having Ms. Sinclair move in to his home.

One week later, after Ms. Sinclair made 3 attempts to get Mugan to have sex with her, Ms. Sinclair invented a reason to become agitated and said she was moving back to her girl friends. She called police when Mugan would not let her remove items he had purchased. After she left Mugan learned that Ms. Sinclair, just days prior, withdrew all the money off Mugan's Visa gift cards. This showed she knew she was going to leave Mugan's home so she stole the money just prior.

This is important because the day Mugan was sentenced and right after she testified at the hearing Ms. Sinclair

proceed immediately to Mugan's home, 60 miles from hers, to enter Mugan's home and steal his expensive furnishings. Luckily she was caught in the act and was denied entrance by Mugan's landlord. The locks were all immediately changed.

This shows Ms. Sinclair, days before she moved out, had planned her acts to steal. After the hearing it was also learned that Tammy Gamble, Mugan's ex-wife, paid Ms. Sinclair $5,000.00 to set Mugan up and get him sent back to prison. One person said it was only $1,000.00.

These are the facts brought out after the revocation hearing which the Court never got to consider.

It was not Mugan who tried to decieve the Court's No Contact order for his own gains. Quite the opposite.

Mugan was in possession of the stun gun as well as his brother's cell phone but hardly believes if the Court found only these 2 facts that the Court would have sentenced him to 11 months in federal prison.

Lastly, Mugan contested the two additional conditions of Supervised Release imposed upon his release.

One condition was Mugan was to be placed in halfway house upon his release. The second was that Mugan be required to be monitored by GPS.

The Court overruled the objections because counsel failed to inform the court of circuit precedent.

On the record the Court only made a finding on the first

could show his probation officer that he had suitable housing and employment upon leaving prison then that officer could alert the Court and he would modify that condition.

As to the GPS monitoring there are no findings or evidence as to why the GPS monitoring was related to the revocation matters. Therefore, it is difficult to argue against findings that do not exist. (See Exhibit "A" attached.)

The GPS special condition is not reasonably related to any of the violations set forth in the record. It also is not reasonably related to the statutory factors set forth in 18 U.S.C. §§ 3583(d).

The Court did not find that any of the alleged activity was related to Mugan being somewhere forbidden by any conditions or Court orders. Nor did the Court explain how the GPS restrictions would deter from future criminal conduct, protect the public from future crimes or assist in training, medical care or correctional treatment. For similar reasons, the condition impermissibly involves a greater deprivation of liberty than is reasonably necessary to afford adequate deterrence, protect the public and provide medical care, training, or treatment.

"Special Conditions ... are frequently challenged." See United States v. Tho-Nimrod Sterling, 959 F.3d 855 (8th cir. 2020); In reviewing special conditions for abuse of discretion, the Court weighs the statutory factors independently... The basis for each condition must be discernable in the record.

In United States v. Kelly, 625 F.3d 1014, 1026 (8th cir. 2010) the Court

particular special conditions on certain types of offenders, such as sexual offenders." "Instead, we require a particularized showing of the need for the condition in each case." Id. Probation Officers in the federal system must consider carefully the special conditions of Supervised Release they recommend and ensure such conditions are rationally connected and "narrowly" tailored to a defendant's specific correctional needs without creating absurd and illogical pitfalls and traps for defendants on Supervised Release -- Justice Bye 8th Circuit Court of Appeals. He goes on to say he expects the same of the District Courts when they consider whether to adopt those recommendations. There is nothing in the record, and no evidence was introduced, when Mugan objected to the GPS special condition, as to how GPS could have prevented any allegation in the revocation reasons. Nothing in the record as to how GPS could prevent future violations. Mugan is confined to the Northern District of Iowa by law. No evidence he violated that rule. No evidence he travelled to Ms Sinclair's residence, because he did not ... Ms. Sinclair travelled to Mugan's house 60 miles from hers. Others subject to the No contact order reside in Texas. There are no allegations Mugan has ever contacted them because he has not. In fact Mugan notified his Probation Officer when Tammy Gamble was attempting to contact him. The Officer told Mugan to block the phone number, which he did.

The GPS monitoring special condition must be vacated

Mugan has served 6 months of the 11 month sentence as of the date of this petition.

If it would please the Court Mugan would request an immediate evidentiary hearing and appointment of new counsel to adequately present these facts herein to the Court's satisfaction.

Mugan is incarcerated, he believes, unconstitutionally and his new special conditions with 2 more additional years of Supervised Release are unconstitutional as well.

Every day served is in violation of the U.S. Constitution.

Wherefore, Mugan requests this petition for relief be Granted.

cc) File

Respectfully Submitted,

Allan C. Mugan 08953-029
Federal Correctional Institution
P.O. Box 7007
Marianna, Fl. 32447

Attached is Exhibit "A" which is an Assessment from the Federal Bureau of Prisons. After all due considerations the FBOP has determined Mugan to be a "LOW RISK" to repeat criminal behavior. This supports Mugan's contention herein that 6 P.S. is unwarranted.


*Exhibit "A"*



# Individualized Needs Plan - Program Review (Inmate Copy)
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MUGAN, ALLAN 08953-029

Most Recent Payment Plan

| FRP Assignment: | COMPLT | FINANC RESP-COMPLETED | Start: 11-07-2022 |
|---|---|---|---|
| Inmate Decision: | AGREED | $25.00 | Frequency: QUARTERLY |
| Payments past 6 months: | | $3,681.79 | Obligation Balance: $0.00 |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | | |
| 2 | REST FV | $4,500.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 11-07-2022 | MNA | PAYMENT | PRIOR PYMT | $3,681.79 |

**FRP Deposits**

Trust Fund Deposits - Past 6 months: $943.15    Payments commensurate? N/A

New Payment Plan: ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|
| | | 11-04-2022 |
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 09-12-2022 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 02-03-2023 |
| N-ANGER R | NEED - ANGER/HOSTILITY REFUSE | 02-03-2023 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 02-03-2023 |
| N-COGNTV N | NEED - COGNITIONS NO | 10-26-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 02-03-2023 |
| N-EDUC N | NEED - EDUCATION NO | 02-03-2023 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 02-03-2023 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 02-03-2023 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 02-03-2023 |
| N-MEDICL Y | NEED - MEDICAL YES | 02-03-2023 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 02-03-2023 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 02-03-2023 |
| N-TRAUMA N | NEED - TRAUMA NO | 02-03-2023 |
| N-WORK Y | NEED - WORK YES | 02-03-2023 |
| R-LW | LOW RISK RECIDIVISM LEVEL | |

**Progress since last review**

Mugan did not obtain and maintain a work detail assignment or enroll in an apprenticeship program as recommended.

**Next Program Review Goals**

This is your last team prior to your upcoming release date to the RRC 3/27/2023. No further goals are assigned at this time.

**Long Term Goals**

Successfully complete the RRC by 07-08-2023.

**RRC/HC Placement**

Recommended Placement on date 02-27-2023.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources
- Offense
- Prisoner
- Court Statement
- Sentencing Commission

**Comments**

** No notes entered **

Allan C. Mugan 08953-029
Federal Correctional Institution
P.O. Box 7007
Marianna, FL. 32447

XRAYED US MARSHALS SERVICE

U.S. District Court
Clerk of Court
111 Seventh Ave. SE
Cedar Rapids, Ia. 52401



Noposmark
date-EB



Legal Mail